382 So.2d 849 (1980)
Charles CAPORALE and Karen Caporale, Appellants,
v.
RALEIGH INDUSTRIES OF AMERICA, INC., a Foreign Corporation, et al., Appellees.
No. 79-757.
District Court of Appeal of Florida, Third District.
April 22, 1980.
*850 Bradford, Williams, McKay, Kimbrell, Hamann, Jennings & Kniskern and T.E. Scott, Talburt, Kubicki & Bradley, Miami, for appellants.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James C. Blecke, Leland E. Stansell, Jr. and Robert A. Glassman, Miami, for appellees.
Before SCHWARTZ, J., and PEARSON, TILLMAN and EZELL, BOYCE F., Jr. (Ret.), Associate Judges.
PER CURIAM.
The Caporales, plaintiffs below in this products liability suit for personal injuries, appeal the final judgments entered pursuant to directed verdicts granted to the defendants at the close of the evidence. We reverse as to both defendants.
Charles Caporale was injured as a result of a bicycle accident and filed suit against both Raleigh Industries of America, the manufacturer-distributor,[1] and Raleigh Bicycles of North Dade, the retailer and assembler of the machine. Claiming that his accident and injuries were caused by the front wheel falling off the bicycle, Caporale and his wife sued the defendants on theories of negligence, breach of warranty, and strict liability in tort. The evidence presented at the trial below and considered here in the light most favorable to the Caporales is described as follows.
Charles Caporale purchased a bicycle from Raleigh Bicycles of North Dade. Since the manufacturer shipped the bicycles in parts, the retailer had to assemble the type bicycle selected by Mr. Caporale. Unbeknownst to Caporale, the particular bike he selected came equipped with a "quick-release" front wheel. This type wheel is fastened onto the frame of the bicycle with a locking lever that fits into a specially designed axle rather than with the nuts and bolts customarily used.
Caporale used the bicycle once or twice a week for about three months prior to the accident. At the time of the accident, Caporale was riding through a parking lot. He went over a speed bump and both he and the "quick-release" wheel were separated from the bike.
Caporale could not recall the accident, but an eye witness testified that Caporale was riding at a normal speed as he crossed the bump. The witness could not, however, determine whether Caporale or the front wheel left the bicycle first.
Caporale also presented the testimony of an expert witness who averred that the bicycle in question, particularly the "quick-release" mechanism, was misassembled at the time of the accident. The expert further postulated that had the bicycle been properly assembled at the time of purchase, it would not have needed further adjustment nor would it have become dangerously loosened through normal use. This testimony, coupled with Caporale's statement that he had not tampered with the assembly of the bicycle since the time of purchase, created a question for the jury as to whether the bicycle was improperly assembled by Raleigh Bicycles of North Dade and whether the improper assembly caused the accident. Thus, the trial court erred in directing a verdict in favor of the defendant-retailer. Marcano v. Puhalovich, 362 So.2d 439 (Fla. 4th DCA 1978).
*851 Furthermore, the manufacturer, Raleigh Industries, will be liable for injury caused by the improper assembly, if any, of the bicycle by Raleigh Bicycles of North Dade. Raleigh Industries clearly contemplated that the bicycle would be fully assembled by an authorized dealer.[2] The manufacturer implicitly guaranteed that such assembly would be properly done. (Raleigh Bicycles of North Dade was an authorized dealer of the manufacturer.) The manufacturer cannot now disclaim liability for injuries to the ultimate purchaser of a product where the manufacturer knowingly relies on its dealer to put the product in a finished state. Sabloff v. Yamaha Motor Co., 113 N.J. Super. 279, 273 A.2d 606 (1971); Vandermark v. Ford Motor Co., 61 Cal.2d 256, 391 P.2d 168, 37 Cal. Rptr. 896 (1964). The manufacturer's argument that the authorized dealer is an independent contractor and that, therefore, the manufacturer is not responsible for the dealer's action, is not persuasive. The manufacturer instructed the dealer in the assembly of the bicycle and implicitly made the dealers' service its own. See generally: Favors v. Firestone Tire & Rubber Co., 309 So.2d 69 (Fla. 4th DCA 1975). But see: Chrysler Airtemp v. Stevens, 346 So.2d 1236 (Fla. 2d DCA 1977). Consequently, a directed verdict should not have been entered in favor of the manufacturer either. The evidence presented jury questions of whether there was an improper assembly of the bicycle and whether the misassembly, if any, was the proximate cause of the plaintiffs' injuries. Therefore, these final judgments in favor of the defendant-appellees are reversed and the cause is remanded for further proceedings in accordance with this decision.
In light of our disposition of the foregoing, we need not reach the other issues raised by the appellants.
Reversed and remanded.
NOTES
[1] Raleigh Industries of America, the exclusive American distributor of the bicycles, is deemed the manufacturer under Florida law. Edwards v. California Chemical Co., 245 So.2d 259 (Fla. 4th DCA 1971).
[2] A warranty, extended by Raleigh Industries with each bicycle it manufactured, reads in part:

"Raleigh Industries of America, Inc. (`Raleigh') warrants its bicycles to be free of any defects in workmanship or material under normal use ... as expressly provided under this warranty. "Each Raleigh bicycle will be fully assembled by an Authorized Raleigh Dealer at the time of purchase."